United States District Court
Southern District of Texas

**ENTERED**

May 14, 2024

Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

DAVID RODRIGUEZ,                        §
(TDCJ # 01166981),                      §
                                        §
     Plaintiff,                   §
                                        §
vs.                                     §   CIVIL ACTION NO. H-23-4026
                                        §
WARDEN KENNETH PUTNAM, *et al.*,        §
                                        §
     Defendants.                  §

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

David Rodriguez, (TDCJ #01166981), is an inmate in the custody of the Texas Department of Criminal Justice–Correctional Institutions Division ("TDCJ"). Representing himself and proceeding without prepaying the filing fee, Rodriguez sued multiple prison officials at TDCJ's Jester III Unit under 42 U.S.C. § 1983. (Docket Entry No. 1). He alleges that these prison officials violated his constitutional rights by failing to protect him both before and during an attack by another inmate on February 16, 2022, by being deliberately indifferent to his serious medical needs after the attack, and by failing to investigate his grievances. (*Id.*). At the court's request, Rodriguez filed a more definite statement of his claims. (Docket Entry No. 14). After screening the complaint as required by 28 U.S.C. § 1915A, the court ordered service of process on the defendants, and they responded with a motion to dismiss. (Docket Entry No. 16). Rodriguez has not responded to the motion, and his time to do so has now expired. Based on the court's review of the motion, the record, and the law, the court grants the defendants' motion to dismiss in part and denies it in part. The reasons are explained below.

## I.    Background

Rodriguez is a state inmate currently in TDCJ's Powledge Unit.  In October 2023, he filed a civil rights complaint concerning events that occurred when he was previously in TDCJ's Jester III Unit.  (Docket Entry No. 1).  Rodriguez alleges that he was transferred to the Jester III Unit in 2021 because he had been the subject of "various documented threats of violence" from gangs within the prison system.  (*Id.* at 5).  He also alleges that he was in danger of being attacked by other inmates because he was a confidential informant for various TDCJ administrators and the Office of the Inspector General.  (*Id.*).

Rodriguez alleges that on February 16, 2022, he was assigned to a painting project in the main hallway directly in front of the security office.  (*Id.* at 6).  As he was working, Lieutenant Jacinto Gil, Sergeant Tynesia Ross, and Sergeant Stacey Lammers were standing in the security office, watching both Rodriguez and the morning Unit traffic.  (*Id.*).  While Rodriguez was painting, Corrections Officer Theodore Knaa[1] escorted two inmates—Inmate Valdez and another offender—out of administrative segregation/restrictive housing and into the main hallway.  (*Id.*). Neither inmate was secured in handcuffs or other restraints, which violated TDCJ's policies concerning the transfer of inmates from this type of housing.  (*Id.*).  Officer Knaa stopped Inmate Valdez in the main hallway, about 20 feet from where Rodriguez was working.  (*Id.*).  Officer Knaa then walked away from Inmate Valdez to speak with another officer about 10 feet away. (*Id.*).  While Officer Knaa was away, Rodriguez heard "very fast footsteps" and then he was violently attacked on the left side of his head and face.  (*Id.*).  Rodriguez alleges that one of the blows drove his head into the concrete wall that he was painting, causing him to lose consciousness.  (*Id.*).  When he came to, he was seated in the chain room with Sergeant Ross.  (*Id.*).

---

[1]Rodriguez identified this defendant as "Theodore Nkaa."  The court will refer to this defendant by the name provided by the defendants.

Once Rodriguez was conscious, Sergeant Ross walked him to the medical clinic, where she told Nurse Efingenia Go what had happened.  (*Id.*).  Nurse Go asked Rodriguez whether he was injured, and Rodriguez replied that his head was throbbing, he was confused, and he was "off-balance."  (*Id.*).  Nurse Go took Rodriguez's vitals and noted that he had a knot on his head and swelling on the left side of his face.  (*Id.*).  She told Rodriguez that his pain and confusion were normal after an attack, that he should be fine, and that he could return to his work assignment.  (*Id.*).  Rodriguez continued to express health concerns, but he was escorted out of the clinic.  (*Id.*).

Rodriguez left the clinic and returned to the hallway where he had been working.  (*Id.* at 6-7).  When he got there, Warden Kenneth Putnam, Major Marcus Spivey, Lieutenant Gil, Sergeant Ross, Sergeant Lammers, and an unknown transport officer were waiting for him.  (*Id.*).  Warden Putnam asked Rodriguez whether Inmate Valdez had been in handcuffs, and Rodriguez replied that he was not.  (*Id.* at 7).  Warden Putnam turned to the unknown transport officer, who said that he was about to put handcuffs on Inmate Valdez when Valdez "took off" and attacked Rodriguez.  (*Id.*).  Sergeant Ross took photos of Rodriguez's injuries, and Rodriguez was then sent back to work.  (*Id.*).  When Rodriguez protested that he did not feel well, Major Spivey refused to allow Rodriguez to return to the clinic for further evaluation.  (*Id.*).  As Rodriguez started to go back to painting, another officer—one Officer Reed—walked up to him and told him to "watch his back" because Inmate Valdez had told his gang that Rodriguez was a "snitch."  (*Id.*).

Rodriguez alleges that over the next several weeks, he "continued to go back to medical" because his headaches and other symptoms were not improving.  (*Id.*).  Each time, "all the nurses do is check [his] vitals and say all is okay" while ignoring his complaints of continuing headaches.  (*Id.*).  Unhappy with this, Rodriguez filed a Step 1 grievance about the lack of medical care.  (*Id.*).  On March 8, 2022, Captain Jaunissa Josiah called Rodriguez into her office and asked Rodriguez

why he did not come to her informally before filing his grievance.  (*Id.*).  When Rodriguez told Captain Josiah that he needed medical care because he was still not well, she responded that there was nothing she could do about that.  (*Id.* at 7-8).  She also asked Rodriguez whether he knew "what happens to offenders who file this type of paperwork."  (*Id.* at 8).  When Rodriguez asked if that was a threat, Captain Josiah smirked and told him to leave.  (*Id.*).

Rodriguez alleges that after the meeting with Captain Josiah, he submitted I-60s and sick-call requests, walked into the medical clinic, contacted the psych department, contacted the wardens and ranking staff, and contacted Safe Prisons officer Sergeant Lammers about his continuing health concerns.  (*Id.*).  Despite this, Rodriguez alleges that he received no additional medical care or other relief.  (*Id.*).  Rodriguez also alleges that when he asked for copies of the records from the February 16 attack, he was told that no record of the incident existed.  (*Id.*).  Rodriguez alleges that he filed further Step 1 and Step 2 grievances about the lack of records and lack of medical care, but none of those grievances have been returned to him.  (*Id.*).

Rodriguez alleges that between February 16 and July 11, he was seen and evaluated on multiple dates by Dr. Edgar Hulipas, Nurse Lauretta Onwukwe, Nurse Martha Beck, and Nurse Go.  (*Id.* at 9).  Each of them refused his requests to be sent to a hospital for further evaluation.  (*Id.*).  Only after Rodriguez refused to leave the clinic on July 11 was he sent to a local emergency room and then transferred to Memorial Hermann, where he was diagnosed with an acute subdural hematoma.  (*Id.*).

Rodriguez alleges that Warden Ochoa was aware of the attack, the missing Step 1 and Step 2 grievances, and his requests for further medical treatment.  (*Id.* at 10).  He alleges that she met with him after the attack and told him that she would contact the Office of the Inspector General (OIG) to file a report of what had happened.  (*Id.*).  Rodriguez alleges that despite this promise,

4

nothing was ever done.  (*Id.*).  He alleges that the Jester III administrative officers and "ranking officers" were aware that he was a "targeted informant" and were aware that Inmate Valdez is a member of the Tango Blast Gang.  (*Id.*).

Rodriguez attached a number of documents to his complaint that he alleges support his claims.  (Docket Entry No. 2).  These include a Step 1 grievance filed on February 25, 2022, in which Rodriguez reports the February 16 attack and relates the same facts alleged in his complaint.  (*Id.* at 2-3).  Warden Ochoa responded to the Step 1 grievance, stating that the incident had been investigated, that "[t]here was sufficient evidence to substantiate your allegation," and that actions had been taken to ensure Rodriguez's safety.  (*Id.*).  Rodriguez filed a Step 2 grievance appeal, asking for the OIG to conduct an independent investigation into the incident.  (*Id.* at 4-5).  The response to the Step 2 grievance, signed by one "H.R. Pederson," states again that there was sufficient evidence to support Rodriguez's allegations and that corrective actions had been taken.  (*Id.* at 5).  The response also notes that Rodriguez had reported that he did not believe that his life was in danger, and that he should notify a ranking officer immediately if that changed.  (*Id.*).

Rodriguez also attached certain medical records to his complaint.  (*Id.* at 6-17).  These records substantiate Rodriguez's allegations that he was seen in the clinic on February 20, 22 and 25, complaining of continued headaches and dizziness after the February 16 attack.  (*Id.* at 6, 9).  At the February 22 visit, Rodriguez was not treated but was provided with "reassurance."  (*Id.* at 6).  In a sick-call request submitted on March 11, Rodriguez again requested a medical evaluation, alleging that his head hurt, his vision was impaired, and he was nauseous.  (*Id.* at 8).  Notes from that clinic visit indicate that no injuries were documented and that the "golden period of observation has passed."  (*Id.*).  Rodriguez was prescribed Tylenol and range-of-motion exercises.  (*Id.*).

On June 19, 2022, Rodriguez was again seen in the clinic, complaining of head and neck pain.  (*Id.* at 15).  On July 1, 2022, Rodriguez was seen again under the nursing protocol for headache and dizziness.  (*Id.* at 10).  The assessment states that Rodriguez had been coming to the clinic with the same complaints at least three times a month for several months.  (*Id.*).  He was seen again on July 9 with the same complaint, as well as a complaint of neck pain.  (*Id.* at 12).  When he was observed moving and turning his head without difficulty, he left medical and refused further treatment.  (*Id.*).

On July 11, Rodriguez returned again to the clinic, complaining of head and neck pain.  (*Id.* at 14).  He was given Tylenol and scheduled to see a provider the next day.  (*Id.*).  Rodriguez refused to leave the clinic, insisting that something more was wrong.  (*Id.*).  He was sent to the local emergency room and then transferred to Memorial Hermann, where he underwent a craniotomy for an acute subdural hematoma.  (*Id.* at 16).

Rodriguez alleges that Warden Putnam and Warden Ochoa are liable for his injuries because they knew that he was in the danger from other inmates and failed to take steps to protect him.  (Docket Entry Nos. 1, p. 3; 14, pp. 5-6).  Rodriguez also alleges that Warden Putnam and Warden Ochoa ignored his repeated requests for effective medical care.  (Docket Entry No. 14, pp. 5-6).  In addition, Rodriguez alleges that Warden Ochoa failed to properly investigate the incident and his complaints that he was being denied records and that his grievances were disappearing.  (*Id.* at 6).

As to Captain Josiah, Rodriguez alleges that she interviewed him after he filed his Step 1 grievance, but then she failed to investigate his grievances.  (*Id.* at 7).  Rodriguez also asked her for help getting medical care, but she ignored him.  (*Id.* at 8).  Rodriguez also alleges that Major Spivey ignored his requests for medical help.  (*Id.* at 6-7).

6

Rodriguez alleges that Lieutenant Gil, Sergeant Ross, and Sergeant Lammers were present when the attack occurred but took no actions to either prevent the attack or to stop it once it started. (*Id.* at 8-11).  As to Officer Knaa, Rodriguez alleges that he failed to ensure that Inmate Valdez was properly restrained, in violation of TDCJ policies.  (*Id.* at 11).  Rodriguez also alleges that Knaa both failed to prevent the attack and failed to intervene during the attack.  (*Id.*).

As to defendants Dr. Hulipas, Nurse Onwukwe, Nurse Beck, and Nurse Go, Rodriguez alleges that they were deliberately indifferent to his complaints of head and neck injuries for months after the attack.  (*Id.* at 12-15).  Rodriguez seeks monetary damages from all of the defendants to compensate him for his pain and suffering.  (Docket Entry No. 1, p. 5).

The defendants responded to Rodriguez's complaint with a motion to dismiss, contending that he fails to allege sufficient facts to state claims against them and asserting that they are protected by qualified immunity in any event.  (Docket Entry No. 16).  Rodriguez has not responded to the motion, and his time to do so has now expired.

## II.     The Legal Standards.

### A.     Actions Under 42 U.S.C. § 1983

Rodriguez brings his claims against all the defendants under 42 U.S.C. § 1983.  "Section 1983 does not create any substantive rights, but instead was designed to provide a remedy for violations of statutory and constitutional rights." *Lafleur v. Texas Dep't of Health*, 126 F.3d 758, 759 (5th Cir. 1997) (per curiam); *see also Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).  To state a valid claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Gomez v Galman*, 18 F.4th 769, 775 (5th Cir. 2021) (per curiam).  When the facts alleged by the

plaintiff, taken as true, do not show a violation of a constitutional right, the complaint is properly dismissed for failure to state a claim. *See, e.g., Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009) (per curiam); *Rios v. City of Del Rio, Tex.,* 444 F.3d 417, 421 (5th Cir. 2006).

### B.    Motions to Dismiss

The defendants move to dismiss Rodriguez's complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  A motion to dismiss under Rule 12(b)(1) challenges the court's jurisdiction to hear the case.  *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam).  A Rule 12(b)(1) motion is properly granted when the court lacks the statutory or constitutional power to hear the case, such as when the claims are barred by a state's sovereign immunity.  *See High v. Karbhari*, 774 F. App'x 180, 182 (5th Cir. 2019) (per curiam) (citing *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009), and *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 240 (5th Cir. 2005)).  Because a Rule 12(b)(1) motion challenges the court's jurisdiction, "[w]hen a Rule 12(b)(1) challenge is filed with other Rule 12 motions, the court should address the Rule 12(b)(1) motion 'before addressing any attack on the merits.'"  *D&G Holdings, L.L.C. v. Becerra,* 22 F.4th 470, 474 (5th Cir. 2022) (quoting *Ramming*, 281 F.3d at 161).

A motion to dismiss under Rule 12(b)(6) is properly granted when the plaintiff's complaint fails to state a claim upon which relief can be granted.  When the court considers a motion under Rule 12(b)(6), "the factual information to which the court addresses its inquiry is limited to the (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201."  *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).  The court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."  *Powers v. Northside Indep. Sch. Dist.*, 951 F.3d 298, 305 (5th Cir. 2020) (cleaned up).  The court "construes the complaint liberally

in favor of the plaintiff," "takes all facts pleaded in the complaint as true," and considers whether "with every doubt resolved on [the plaintiff's] behalf, the complaint states any valid claim for relief." *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (cleaned up).

To survive a motion to dismiss under Rule 12(b)(6), the complaint must include specific facts, not conclusory allegations. *See Powers*, 951 F.3d at 305. The complaint must also allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Gomez*, 18 F.4th at 775. A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). If the facts alleged are facially sufficient, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). But if the complaint does not set forth "enough facts to state a claim to relief that is plausible on its face," it must be dismissed. *Id.* at 570.

### C. Pleadings from Self-Represented Litigants.

Rodriguez is representing himself. Courts construe pleadings filed by self-represented litigants under a less stringent standard of review. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). Under this standard, "[a] document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). But even under this liberal standard, self-represented litigants must still "abide by the rules that govern the federal courts." *E.E.O.C. v. Simbaki, Ltd.*,

9

767 F.3d 475, 484 (5th Cir. 2014).  They must also "properly plead sufficient facts that, when liberally construed, state a plausible claim to relief, serve defendants, obey discovery orders, present summary judgment evidence, file a notice of appeal, and brief arguments on appeal."  *Id.* (cleaned up).

### III.   Discussion

#### A.     The Official Capacity Claims.

The defendants move to dismiss Rodriguez's claims against them in their official capacities under the doctrine of sovereign immunity.  Sovereign immunity bars actions against a state or state official unless Congress has abrogated such immunity or the state has specifically waived its immunity.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989).  Congress did not abrogate the states' sovereign immunity when it enacted § 1983.  *Id.*  And the State of Texas has not waived its sovereign immunity for purposes of § 1983 actions.  *See Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839 (Tex. 2007) ("It is up to the Legislature to institute such a waiver, and to date it has not seen fit to do so."); *see also Brice v. Tex. Dep't of Family & Protective Servs.*, No. 14-20-00506-CV, 2022 WL 1310876, at *3 (Tex. App.—Houston [14th Dist.] May 3, 2022, no pet.) (reiterating that the Texas Legislature has not waived sovereign immunity for claims under § 1983).

The fact that Rodriguez has sued state employees, rather than the State of Texas itself, does not change this analysis.  When a government employee is sued in his or her official capacity, the employing entity is the real party in interest for the suit.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent" and are "treated as a suit against the entity").  Rodriguez's claims for money damages against the defendants in their official capacities are

construed as claims against the State of Texas and are barred by the doctrine of sovereign immunity.  The defendants' motion to dismiss the claims against them in their official capacities is granted, and these claims are dismissed with prejudice under Rule 12(b)(1).

> **B.   The Individual Capacity Claims.**

To the extent that Rodriguez sues the defendants in their individual capacities, his claims are not barred by sovereign immunity.  As to these claims, the court must consider whether Rodriguez has alleged sufficient facts in his complaint and More Definite Statement to state a claim for relief under § 1983.  The court addresses Rodriguez's multiple claims against the multiple defendants in turn.

> **1.   The Claims for Supervisory Liability against Warden Putnam and Warden Ochoa.**

Rodriguez alleges that Warden Putnam and Warden Ochoa should be liable for his injuries because they are "responsible for inmates, prison operations."  (Docket Entry No. 1, p. 3).  These allegations do not state a claim for relief because, under § 1983, supervisory officials are not responsible for the actions of their subordinates.  *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002); *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987).

To hold a supervisory prison official liable, the plaintiff must allege facts showing (1) the supervisor's personal involvement in a constitutional deprivation, and (2) a causal connection between the supervisor's wrongful conduct and a constitutional deprivation, or (3) that the supervisory official implemented a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force behind a constitutional deprivation.  *See Thompkins,* 828 F.2d at 303-04; *see also Gates v. Tex. Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008).  Only the direct actions or omissions of government officials, not the actions of their

subordinates, will make them individually liable under § 1983. *See Alton v. Tex. A & M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999).

To the extent that Rodriguez seeks to hold Warden Putnam and Warden Ochoa liable based solely on the actions of their subordinates, he fails to state a claim against either of them upon which relief may be granted. The motion to dismiss the claims of supervisory liability is granted, and Rodriguez's claims against Warden Putnam and Warden Ochoa for supervisory liability are dismissed with prejudice for failing to state a claim.

> **2.      The Claims for Failure to Protect Against Warden Putnam, Warden Ochoa, Lieutenant Gil, Sergeant Ross, Sergeant Lammers, and Officer Knaa.**

Rodriguez alleges that Warden Putnam, Warden Ochoa, Lieutenant Gil, Sergeant Ross, Sergeant Lammers, and Officer Knaa failed to protect him from the attack by Inmate Valdez. Under the Eighth Amendment, prison officials have a duty "to protect prisoners from violence at the hands of other prisoners." *Williams v. Hampton*, 797 F.3d 276, 280 (5th Cir. 2015) (en banc) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). To establish a violation of this right, an inmate must show (1) "that he is incarcerated under conditions posing a substantial risk of serious harm," and (2) that the prison official acted with "deliberate indifference to inmate health and safety." *Id.* (quoting *Farmer*, 511 U.S. at 834). To establish deliberate indifference, the plaintiff must allege facts showing that the prison official was aware that the plaintiff faced "a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *Davis v. Lumpkin*, 35 F.4th 958, 963 (5th Cir. 2022) (quoting *Farmer*, 511 U.S. at 847).

> **a.      The Claims Against Warden Putnam and Warden Ochoa.**

Rodriguez alleges that he was transferred to the Jester III Unit specifically because of documented threats against him from prison gang members and that both "administration" and

"ranking officers" were aware of these documented threats.  He alleges that despite knowing that he was in danger from other inmates due to these threats and his status as a confidential informant, neither Warden Putnam nor Warden Ochoa took any steps to protect him or to ensure his safety when he was working and around other inmates.

Rodriguez's allegations are sufficient to show that Warden Putnam and Warden Ochoa knew that he faced a substantial threat of serious harm.  But Rodriguez does not allege any specific facts showing that Warden Putnam and Warden Ochoa failed to take reasonable steps to reduce that risk or that their alleged failure directly resulted in the injuries Rodriguez suffered.  *See Hale v. Tallapoosa County*, 50 F.3d 1579, 1583 (11th Cir. 1995) (to establish a failure to protect, the plaintiff must show that the defendant's failure to take reasonable steps to protect the plaintiff directly resulted in the plaintiff's injuries).  Rodriguez alleges no facts showing that inmate-on-inmate attacks at the Jester III Unit were so common that Warden Putnam or Warden Ochoa knew or should have known that additional protective measures needed to be put in place.  And he does not allege facts showing that either Warden Putnam or Warden Ochoa knew or had any reason to know that Officer Knaa would violate TDCJ policies and leave Inmate Valdez unrestrained and unsupervised in the area where Rodriguez was working.  The fact that Rodriguez was attacked by another inmate due to a violation of TDCJ security policies does not, standing alone, establish that either Warden Putnam or Warden Ochoa failed to take reasonable actions to protect him that directly resulted in the attack.  *See, e.g., Cantu v. Jones,* 293 F.3d 839, 844 (5th Cir. 2002) (a prison official may be found to have responded reasonably to a risk, even if the harm was not ultimately averted).

In the absence of specific factual allegations showing that Warden Putnam and Warden Ochoa failed to take reasonable steps to protect Rodriguez from an attack by another inmate, his

13

allegations fail to state a claim against either of them for a failure to protect. The defendants' motion to dismiss Rodriguez's failure-to-protect claims against Warden Putnam and Warden Ochoa is granted, and these claims are dismissed with prejudice for failure to state a claim.

      **b.**    **The Claims Against Lieutenant Gil, Sergeant Ross, Sergeant Lammers, and Officer Knaa.**

Rodriguez alleges that Lieutenant Gil, Sergeant Ross, and Sergeant Lammers were in the security office overlooking the main hallway when Officer Knaa brought Inmate Valdez out of administrative segregation/restricted housing without handcuffs or other restraints and when he then left Inmate Valdez unattended within feet of Rodriguez. Despite seeing Inmate Valdez unrestrained and unattended next to Rodriguez, Rodriguez alleges that none of them took any steps to ensure that he was protected from harm by Inmate Valdez. These allegations, taken as true as they must be at this stage of the litigation, tend to show that Lieutenant Gil, Sergeant Ross, and Sergeant Lammers were aware of facts giving rise to an inference that Rodriguez faced a substantial risk of serious harm but failed to take reasonable steps to reduce that risk. Because these allegations are sufficient at this stage of the proceedings to state a claim for a failure to protect, the motion to dismiss filed by Lieutenant Gil, Sergeant Ross, and Sergeant Lammers is denied as to these claims.

In addition, Rodriguez alleges that Officer Knaa failed to protect Rodriguez by failing to follow TDCJ protocols that would have required Inmate Valdez to be handcuffed or otherwise restrained when he was removed from administrative segregation/restrictive housing. (Docket Entry No. 14, pp. 11-12). Rodriguez alleges that had Officer Knaa properly restrained Inmate Valdez, the attack would have been prevented. These allegations, taken as true as they must be at this stage of the litigation, tend to show that Officer Knaa was aware of facts giving rise to an inference that Rodriguez faced a substantial risk of serious harm from Inmate Valdez but failed to

take reasonable steps to reduce that risk. Rodriguez's allegations are sufficient at this stage of the proceedings to state a claim for a failure to protect. The motion to dismiss filed by Officer Knaa is denied as to Rodriguez's claim based on a failure to protect.

### 3.   The Claims for Failure to Intervene Against Lieutenant Gil, Sergeant Ross, Sergeant Lammers, and Officer Knaa.

Rodriguez also alleges that Lieutenant Gil, Sergeant Ross, Sergeant Lammers, and Officer Knaa failed to intervene to protect him when the attack occurred. Even taken as true, these allegations do not state a claim upon which relief can be granted.

A prison official has a duty under the Eighth Amendment "to protect inmates from violence at the hands of other prisoners." *Horton v. Cockrell*, 70 F.3d 397, 400 (5th Cir. 1995) (per curiam); *see also Farmer*, 511 U.S. at 832-33. But not every injury suffered by one prisoner at the hands of another results from a constitutional violation by prison officials responsible for a prisoner's safety. *See Farmer*, 511 U.S. at 834. Instead, for a prison official to violate the Constitution by failing to intervene, the risk of harm and need for protection must be obvious and the prison official must respond to that risk with deliberate indifference. *See Newton v. Black*, 133 F.3d 301, 308 (5th Cir. 1998). To avoid being found deliberately indifferent, a prison official present at the scene of an inmate-on-inmate attack must take *some* action to halt the violence. *See Davidson v. Cannon*, 474 U.S. 344, 348 (1986) (implying that in the failure-to-intervene context, standing by and allowing an attack to proceed constitutes deliberate indifference); *Rios v. Scott*, 100 F. App'x 270, 272 (5th Cir. 2004) (per curiam); *Williams v. Mueller,* 13 F.3d 1214, 1216 (8th Cir. 1994) ("A prison official acts with deliberate indifference to an inmate's safety when the official is present at the time of an assault and fails to intervene or otherwise act to end the assault."). Such actions may include giving verbal orders, leaving the scene to get help, or leaving the scene to obtain tools necessary to halt the violence. *See, e.g., Longoria v. Texas*, 473 F.3d 586, 593 (5th Cir. 2006)

(officers who did not immediately intervene but ran to alert other officers of an ongoing attack and to obtain weapons and tear gas were not deliberately indifferent); *Rios*, 100 F. App'x at 272 (officer who did not immediately intervene in an attack but ran to get help did not act with deliberate indifference); *Verette v. Major*, Civil No. 07-547, 2008 WL 4083032 (W.D. La. Aug. 25, 2008) (officers who gave direct verbal orders to the inmate attacker to put down the tool he was using as a weapon did not act with deliberate indifference). But the Eighth Amendment does not require a prison official to physically intervene in an inmate fight when doing so would place him or her in danger of physical harm. *See Longoria*, 473 F.3d at 593.

Rodriguez alleges that Lieutenant Gil, Sergeant Ross, Sergeant Lammers, and Officer Knaa failed to intervene after Inmate Valdez attacked him. But he alleges no facts tending to show that these defendants simply stood by and did nothing to stop the attack. Rodriguez's allegations tend to show that the attack involved a single punch to the head, which caused Rodriguez's head to hit a wall. Rodriguez does not allege other injuries that would indicate that the attack involved more than this single punch, nor does he allege facts tending to show that Lieutenant Gil, Sergeant Ross, Sergeant Lammers, and Officer Knaa simply stood and watched the attack. In the absence of factual allegations sufficient to show that these defendants took no actions intended to stop the attack once it started, Rodriguez has failed to state a claim against these defendants for a failure to intervene. The motion to dismiss filed by Lieutenant Gil, Sergeant Ross, Sergeant Lammers, and Officer Knaa as to Rodriguez's claims for failure to intervene is granted, and these claims are dismissed with prejudice for failing to state a claim upon which relief can be granted.

### 4. The Claims for Deliberate Indifference Against Warden Putnam, Warden Ochoa, Major Spivey, Captain Josiah, and Sergeant Lammers.

Rodriguez alleges that during the five months following the attack, Warden Putnam, Warden Ochoa, Major Spivey, Captain Josiah, and Sergeant Lammers violated his constitutional

rights by being deliberately indifferent to his need for medical attention.  His allegations are insufficient to state a claim upon which relief can be granted.

As with the claims for failure to protect and failure to intervene, to show that a prison security official was deliberately indifferent to an inmate's need for medical care, the plaintiff "must demonstrate that the official is aware that an 'inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'"  *Davis*, 35 F.4th at 963 (quoting *Farmer*, 511 U.S. at 847 (cleaned up)).   In this context, the deliberate indifference standard is "extremely high."  *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001).   "Actions and decisions by officials that are merely inept, erroneous, ineffective or negligent" do not amount to deliberate indifference.  *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998); *see also Brown v. Callahan*, 623 F.3d 249, 255 (5th Cir. 2010).  Instead, to obtain relief from a prison security official based on that official's deliberate indifference to a medical need, the plaintiff must show that the official intentionally delayed or denied access to medical care or intentionally interfered with the treatment once prescribed.  *See Estelle*, 429 U.S. at 104-05.

Rodriguez admits in his complaint that he was escorted to the clinic immediately after the attack and that he made multiple return trips to the clinic over the next five months.  While Rodriguez clearly expresses his dissatisfaction with the care he received at the clinic and the lack of help in obtaining "better" care, he does not allege any facts showing that Warden Putnam, Warden Ochoa, Major Spivey, Captain Josiah, or Sergeant Lammers intentionally denied him medical care or delayed his access to it.  He also alleges no facts showing that any of these defendants interfered with any treatment that was prescribed.  And while Rodriguez seems to allege that these defendants failed to assist him in getting "better" or more effective medical care,

a prison security official's failure to facilitate additional medical treatment, rather than delaying or denying treatment, does not rise to the level of deliberate indifference. *See Williams v. Certain Individual Employees of Tex. Dep't of Crim. Just.-Inst. Div.*, 480 F. App'x 251, 256-57 (5th Cir. 2010) (per curiam) (finding no deliberate indifference when the guards to whom Williams complained of inadequate care were neither authorized to administer medications nor assign him to the infirmary and when prison medical officials were already aware of Williams's complaints).

Rodriguez's pleadings do not allege facts tending to show that Warden Putnam, Warden Ochoa, Major Spivey, Captain Josiah, or Sergeant Lammers were deliberately indifferent to Rodriguez's need for medical care. Without a showing of deliberate indifference, Rodriguez does not state a claim upon which relief can be granted. The motion to dismiss filed by Warden Putnam, Warden Ochoa, Major Spivey, Captain Josiah, or Sergeant Lammers as to Rodriguez's deliberate indifference claims is granted, and these claims are dismissed with prejudice.

### 5. The Claims for Deliberate Indifference Against Dr. Hulipas, Nurse Onwukwe, Nurse Beck, and Nurse Go.

Rodriguez alleges that Dr. Hulipas, Nurse Onwukwe, Nurse Beck, and Nurse Go violated his constitutional rights by being deliberately indifferent to his need for medical care for the injuries he sustained in the attack. Rodriguez's allegations and the medical records he attached to his complaint contradict this claim.

The Eighth Amendment protects prisoners from cruel and unusual punishment arising from a prison medical provider's deliberate indifference toward a prisoner's injuries or pain. *See Estelle*, 429 U.S. at 105. To state a claim for cruel and unusual punishment, the prisoner must show that the prison medical provider acted with "deliberate indifference" to a "serious medical need" in a manner that "constitutes the unnecessary and wanton infliction of pain." *Id.* at 104 (cleaned up). As explained above, to prove deliberate indifference, "a plaintiff must demonstrate that the official

is aware that an 'inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" *Davis*, 35 F.4th at 963 (quoting *Farmer*, 511 U.S. at 847 (cleaned up)). And in the context of claims against medical providers, the deliberate indifference standard is again "extremely high." *Domino*, 239 F.3d at 756. "Actions and decisions by officials that are merely inept, erroneous, ineffective or negligent" do not amount to deliberate indifference. *Doe*, 153 F.3d at 219. Neither do "[u]nsuccessful medical treatment, acts of negligence, . . . medical malpractice" or "a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (cleaned up). Instead, to show that a prison medical provider's actions violated the Constitution, the prisoner must show that the prison medical provider "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* (cleaned up).

Rodriguez alleges that immediately after the attack, Sergeant Ross escorted him to the clinic, where Nurse Go assessed him, took his vital signs, told him his symptoms were normal after such an attack, and told him to return if the symptoms did not resolve. Rodriguez returned to the clinic multiple times over the next five months, and each time the staff took vital signs, assessed him, and prescribed pain relief. The medical records attached to Rodriguez's complaint do not show that any of the medical providers refused to treat him, ignored his complaints, intentionally treated him incorrectly, or otherwise disregarded his medical needs. Instead, the records show that they listened to Rodriguez's complaints and provided him with the treatment they believed was needed, contradicting his claim of deliberate indifference. *See Brauner v. Coody*, 793 F.3d 493, 500 (5th Cir. 2015) ("Deliberate indifference is not established when medical records indicate that [the plaintiff] was afforded extensive medical care by prison

officials." (quoting *Norton v. Dimazana,* 122 F.3d 286, 292 (5th Cir. 1997))).   Rodriguez's

contention that he should have received more or different treatment and that he should have been

sent to an outside hospital earlier establishes only his disagreement with the treatment he received,

not deliberate indifference.  *See Gobert*, 463 F.3d at 346; *see also Estelle,* 429 U.S. at 107 ("[T]he

question of whether an X-ray or additional diagnostic techniques or forms of treatment is indicated

is a classic example of a matter for medical judgment.  A medical decision not to order an X-ray,

or like measures, does not represent cruel and unusual punishment.").  And even if the defendant

medical providers were negligent in their treatment of Rodriguez, "[m]edical malpractice does not

become a constitutional violation merely because the victim is a prisoner."  *Estelle*, 429 U.S. at

106.

Rodriguez's allegations and the attachments to his complaint contradict his assertion that

Dr. Hulipas, Nurse Onwukwe, Nurse Beck, and Nurse Go were deliberately indifferent to his need

for medical care.  Their motion to dismiss is granted as to Rodriguez's claims of deliberate

indifference, and his claims against Dr. Hulipas, Nurse Onwukwe, Nurse Beck, and Nurse Go

based on deliberate indifference are dismissed with prejudice for failing to state a claim.

### 6.    The Claims of Failure to Investigate Against Captain Josiah and Warden Ochoa.

Rodriguez alleges that Captain Josiah failed to properly investigate the claims he raised in

his grievances and that Warden Ochoa failed to investigate his claims and institute an investigation

into the attack by the OIG.  These allegations fail to state a claim upon which relief can be granted.

Inmates do not have a constitutional right to have their prison grievances resolved to their

satisfaction.  *See Hawes v. Stephens*, 964 F.3d 412, 418 (5th Cir. 2020); *Geiger v. Jowers,* 404

F.3d 371, 374 (5th Cir. 2005) (per curiam); *see also Jones v. N. Car. Prisoners' Labor Union, Inc.,*

433 U.S. 119, 138 (1977) (Burger, J., concurring) (applauding the adoption of grievance

procedures by prisons, but expressly stated that such procedures are not "constitutionally mandated"). Absent such a right, the failure to investigate a complaint or grievance is not a violation of a constitutional right. *See Hill v. Walker*, 718 F. App'x 243, 250 (5th Cir. 2018) (per curiam) (because prisoners have no constitutional right to have their grievances resolved to their satisfaction, "an alleged § 1983 due process violation of failure to investigate grievances is indisputably meritless").

Rodriguez's claims that Captain Josiah and Warden Ochoa failed to properly investigate his grievances and complaints does not allege a constitutional violation and so fails to state a claim upon which relief can be granted under § 1983. The defendants' motion to dismiss the claims for failure to investigate is granted, and these claims against Captain Josiah and Warden Ochoa are dismissed with prejudice.

### C.   Defense of Qualified Immunity.

In their motion to dismiss, the defendants contend that even if one or more of Rodriguez's claims sufficiently states a claim for relief, they are entitled to dismissal based on qualified immunity because Rodriguez has failed to show that the defendants' actions were objectively unreasonable. (Dkt. 16, pp. 15-21). Based on the analysis above, the only claims remaining in this action are Rodriguez's failure-to-protect claims against Lieutenant Gil, Sergeant Ross, Sergeant Lammers, and Officer Knaa. The court will consider the qualified immunity defense only as to those claims.

"Qualified immunity protects officers from suit unless their conduct violates a clearly established right." *Austin v. City of Pasadena, Tex.*, 74 F.4th 312, 322 (5th Cir. 2023) (quoting *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003)); *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). Determining whether qualified immunity protects an officer in a particular

situation involves two steps: "first we ask whether the officer's alleged conduct has violated a federal right; . . . second we ask whether the right in question was 'clearly established' at the time of the alleged violation, such that the officer was on notice of the unlawfulness of his or her conduct." *Solis v. Serrett*, 31 F.4th 975, 981 (5th Cir. 2022) (quoting *Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019) (en banc)).

When qualified immunity is raised as a basis for dismissal in a Rule 12(b)(6) motion, the court must determine whether "the plaintiff's pleadings assert facts which, if true, would overcome the defense." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (quoting *Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991, 994 (5th Cir. 1995)).  "[A]n assertion of qualified immunity in a defendant's answer or motion to dismiss does not subject the complaint to a heightened pleading standard." *Arnold v. Williams,* 979 F.3d 262, 266 (5th Cir. 2020) (citing *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016)).  Instead, "claims implicating qualified immunity are subject to the same [Federal] Rule [of Civil Procedure] 8 pleading standard set forth in *Twombly* and *Iqbal* as all other claims."  *Id*.  Therefore, to overcome the qualified-immunity defense, the plaintiff must allege facts tending to show that the defendants violated the plaintiff's constitutional rights and that the defendant's actions were objectively unreasonable in light of clearly established law.  *See Alexander v. Eeds*, 392 F.3d 138, 144 (5th Cir. 2004).

In the context of a failure-to-protect claim, the law was clearly established in February 2022 that "prison officials have a constitutional duty to protect prisoners from violence at the hands of their fellow inmates." *Longoria*, 473 F.3d at 592 (citing *Farmer*, 511 U.S. at 832-33).  The only questions before this court at this stage of the proceedings are whether Lieutenant Gil, Sergeant Ross, Sergeant Lammers, and Officer Knaa knew that Rodriguez was subject to a substantial risk

22

of harm from another inmate and whether they took objectively reasonable actions to reduce that risk in light of this clearly established law.

As explained above, Rodriguez alleges that Lieutenant Gil, Sergeant Ross, Sergeant Lammers, and Officer Knaa failed to protect him from inmate violence because none of them took any steps to protect him from the attack by Inmate Valdez. Lieutenant Gil, Sergeant Ross, Sergeant Lammers, and Officer Knaa contend that they are entitled to qualified immunity because Rodriguez does not allege facts to show that they knew that he faced a substantial risk of serious harm because of his status as a confidential informant. They also contend that it was not unreasonable for them to permit other inmates to be transported past Rodriguez while he worked in the hallway.

But this argument overlooks Rodriguez's allegations that Officer Knaa transported Inmate Valdez out of administrative segregation/restrictive housing without handcuffs or other restraints and then left him, unsecured and unattended, in the hallway where Rodriguez was working and in plain view of Lieutenant Gil, Sergeant Ross, and Sergeant Lammers. (Docket Entry Nos. 1, p. 6; 14, pp. 9-11). Rodriguez alleges that leaving Inmate Valdez unrestrained and unattended violated TDCJ policies and placed him at a substantial risk of harm, regardless of his status as a confidential informant. Despite this clear violation of TDCJ security policies, neither Lieutenant Gil, Sergeant Ross, nor Sergeant Lammers took any steps to restrain Inmate Valdez or otherwise protect Rodriguez from the risk of harm posed by an unrestrained and unattended inmate who was known to be assigned to administrative segregation/restrictive housing. A prison official may not "escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault." *Farmer*, 511 U.S. at 849 n.10.

At this stage of the proceedings, the court must accept Rodriguez's allegations as true. And taken as true, these allegations tend to show that Lieutenant Gil, Sergeant Ross, Sergeant Lammers, and Officer Knaa knew that Inmate Valdez was not secured in compliance with TDCJ policies and yet they took no steps to secure Inmate Valdez or otherwise protect Rodriguez from him. This action, or lack of action, was objectively unreasonable, regardless of whether any of them knew that Rodriguez was specifically at a higher risk for inmate-on-inmate violence. A prison official's knowledge of the risk can be proven through circumstantial evidence, such as by showing that the risk was so obvious that the official must have known about it, *see Farmer*, 511 U.S. at 842, and Rodriguez has alleged facts tending to show that it was obvious to all in the area that Inmate Valdez was not properly restrained or secured.

While Rodriguez may not ultimately prevail on his claim, his allegations are sufficient to defeat a qualified immunity defense at the Rule 12(b)(6) stage. The motion to dismiss on the basis of qualified immunity by Lieutenant Gil, Sergeant Ross, Sergeant Lammers, and Officer Knaa is denied, but without prejudice to the defendants raising the issue in a motion for summary judgment if appropriate.

## IV.    Conclusion

Based on the above, the court orders:

1. The defendants' motion to dismiss, (Docket Entry No. 16), is granted as to Rodriguez's claims against all defendants in their official capacities. These claims are dismissed with prejudice.

2. The defendants' motion to dismiss, (Docket Entry No. 16), is granted as to Rodriguez's claims against all defendants in their individual capacities as to Rodriguez's claims for

supervisory liability, failure to intervene, deliberate indifference, and failure to investigate. These claims are dismissed with prejudice.

3.  The defendants' motion to dismiss, (Docket Entry No. 16), is granted as to Rodriguez's claims against Warden Putnam and Warden Ochoa in their individual capacities for failure to protect.  The claims against them are dismissed with prejudice.

4.  The defendants' motion to dismiss, (Docket Entry No. 16), is denied as to Rodriguez's claims against Lieutenant Gil, Sergeant Ross, Sergeant Lammers, and Officer Knaa in their individual capacities for a failure to protect.  These claims will proceed on the schedule set forth below.

5.  Lieutenant Gil, Sergeant Ross, Sergeant Lammers, and Officer Knaa must answer Rodriguez's claim of failure to protect within **thirty (30) days** from the date of this order.

6.  All parties must file any further dispositive motions within **ninety (90) days** after the date stated on the defendants' certificate of service on their answer to the claim of failure to protect.

7.  Discovery remains stayed until further order of the court.

SIGNED on May 14, 2024, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge